E-filed 12/28/2016

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUNIL KUMARAN VETHODY, et al.,<br><br>  Plaintiffs,<br><br>v.<br><br>NATIONAL DEFAULT SERVICES CORPORATION, et al.,<br><br>  Defendants. | Case No.16-cv-04713-HRL<br><br>**ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANTS' MOTION TO DISMISS**<br><br>Re: Dkt. No. 10 |

Plaintiffs Sunil Kumaran Vethody and Bindu Baburajan Vethody ("Plaintiffs") sue defendants Select Portfolio Servicing, Inc. ("Select") and National Default Servicing Corp. ("NDSC") under Cal. Civ. Code § 2923.6(c), Cal. Civ. Code § 2924.12(a) (for violation of § 2923.6(c)), and Cal. Civ. Code § 2923.7(b); under 12 C.F.R. § 1024.41(g); and for negligence. Dkt. No. 1. All six claims are related to defendants' handling of Plaintiffs' loan modification application. *Id.* Select and NDSC filed the present motion to dismiss the claims for negligence and those related to Section 2923.6(c) and 12 C.F.R. 1024.41(g) for failure to state a claim upon which relief may be granted. Dkt. No. 10. The parties appeared for a hearing on December 13, 2016, and Plaintiffs subsequently submitted a supplemental brief to address an argument related to 12 C.F.R. § 1024.41(g) raised by the defendants for the first time in their reply brief. Dkt. Nos. 13, 31. Each party has consented to magistrate judge jurisdiction. Dkt. Nos. 8, 9.

For the reasons described below, the court grants-in-part and denies-in-part defendants' motion to dismiss.

**BACKGROUND**

Plaintiffs have owned and resided in the house located at 2172 Wood Hollow Court, San Jose, CA, since 2000. Dkt. No. 1, at ¶ 11. In 2004, Plaintiffs refinanced their mortgage loan. *Id.*, at ¶ 12. Eight years later, Plaintiffs were "faced with an extreme financial hardship as a result of a major business failure" and fell behind on their payments. *Id.*, at ¶ 17. But in April 2016, Plaintiffs' son began contributing his income to household expenses, which Plaintiffs allege "resulted in a material change in [their] financial circumstances." *Id.*, at ¶ 18.

Defendant Select is the loan servicer for Plaintiffs' mortgage loan and defendant NDSC is the foreclosure trustee. *Id.*, at ¶¶ 7, 8. In May 2016, Plaintiffs initiated a loan modification application. *Id.*, at ¶ 19. They allege that the application included "all information and documents needed . . . , including the Request for Mortgage Assistance, tax returns, bank statements, proof of income, including a profit and loss statement, and other required forms." *Id.*, at ¶ 19. Further, Plaintiffs assert that they "diligently provided any information or application materials" Select requested from them, *id.*, at ¶ 20, including profit and loss statements for their son, a breakdown of the salary notations on those statements, and a new "Non-Obligor Credit Authorization Form," *id.* at ¶¶ 24, 25, 27. Select also requested pay stubs from Plaintiffs and their son, but Plaintiffs contacted Select and explained that they do not receive pay stubs, as their income is not documented in that fashion. *Id.*, at ¶¶ 21-23. Plaintiffs allege that their authorized agent called Select on July 29, 2016, and that Select advised the agent that "the application was complete and was sent to underwriting." *Id.*, at ¶ 28.

Several days later, however, NDSC recorded a Notice of Trustee's Sale of Plaintiffs' property. *Id.*, at ¶ 29. Plaintiffs allege that they contacted Select after receiving this notice, and that an SPS representative assured them that the Notice of Trustee's Sale was a routine part of the modification process and that "SPS had everything it needed for the modification review and that the application was complete." *Id.*, at ¶ 31. On August 10, however, Plaintiffs again received requests from Select for "yet another profit and loss statement" for their son, and for "pay stubs from each borrower who was a salaried employee or hourly wage earner." *Id.*, at ¶ 34.

Plaintiffs' complaint alleges two claims—under California Civil Code Sections 2923.6(c)

and 2924.12(a)—related to the dual-tracking provision of the California Homeowners' Bill of Rights ("HBOR"), and one claim—under 12 C.F.R. Section 1024.41(g)—related to the equivalent federal regulation. Plaintiffs assert that defendants violated these provisions by recording a Notice of Sale while their complete loan modification application was under review. *Id.* at ¶¶ 41, 52, 66-67. In addition to the dual-tracking violation, Plaintiffs assert two claims related to defendants' alleged violation of HBOR's single point of contact requirement. Finally, Plaintiffs allege that defendants negligently mishandled their loan modification application. *Id.*, at ¶ 74.

Defendants move to dismiss the dual-tracking claims, arguing that Plaintiffs' allegations reveal that their application was not complete when the Notice of Sale was recorded. Dkt. No. 10. Defendants also seek to dismiss the negligence claim on the grounds that they did not owe Plaintiffs a duty of care and that Plaintiffs failed to sufficiently allege injuries proximately caused by their actions. *Id.* Defendants do not currently move to dismiss the single point of contact claims.

## LEGAL STANDARD

To survive a motion to dismiss, a complaint must allege sufficient facts to state a claim for relief that is facially plausible. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Complaints that merely recite the elements of a cause of action are insufficient. *Id.* In considering a motion to dismiss, a court accepts all of the plaintiff's factual allegations as true and construes the pleadings in the light most favorable to the plaintiff. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The court is not required to accept as true, however, "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

## DISCUSSION

**1. California Civil Code Sections 2923.6(c) and 2924.12(a).**

Defendants argue that both of Plaintiffs' claims related to Section 2923.6(c) fail because

the Plaintiffs did not allege that they submitted a complete application. The allegations, defendants assert, suggest the opposite, as Plaintiffs admit that Select requested additional documents after the Notice of Trustee's Sale was recorded.

For the purposes of Section 2923.6, "an application shall be deemed 'complete' when a borrower has supplied the mortgage servicer with all documents required by the mortgage servicer within the reasonable timeframes specified by the mortgage servicer." Cal. Civ. Code § 2923.6(h). "Bald allegation[s]" or conclusory statements that loan applications are complete, without sufficient factual allegations in support, are not enough to survive a 12(b)(6) motion. *Stokes v. CitiMortgage, Inc.*, No. CV 14-00278 BRO (SHx), 2014 WL 4359193, at *7-8 (C.D. Cal., Sep. 3, 2014). Courts have found that plaintiffs alleged sufficient facts to state a claim when they alleged submitting specific documents requested by the defendants within reasonable timeframes, *Flores v. Nationstar Mortg. LLC*, No. CV 13-3898-PLA, 2014 WL 304766, at *4 (C.D. Cal., Jan. 6, 2014), and when they submitted an e-mail from the loan servicer confirming receipt of "all the financial documents required," *Massett v. Bank of Am., N.A.*, No. CV 13-4736 CAS (SSx), 2013 WL 4833471, at *2-3 (C.D. Cal., Sep. 10, 2013).

Here, Plaintiffs have alleged submitting specific documents within reasonable timeframes upon the request of the defendants. Plaintiffs alleged submitting "all information and documents needed for the application, including the Request for Mortgage Assistance, tax returns, bank statements, proof of income, including a profit and loss statement, and other required forms." Dkt. No. 1, at ¶ 19. When defendants requested additional documents, Plaintiffs assert that they responded promptly, providing profit and loss statements for their son, a breakdown of the salary notations on those statements, and a new Non-Obligor Credit Authorization Form, all within short spans of time. *Id.* at ¶¶ 24, 25, 27. Plaintiffs also allege that Select informed their authorized agent that the loan modification "was complete and sent to underwriting" before the Notice of Trustee's Sale was recorded. *Id.* at ¶¶ 28. These assertions are more than bald allegations and conclusory statements.

Defendants argue that Plaintiffs' allegations that Select requested "yet another profit and loss statement" after defendants recorded the Notice of Trustee's Sale proves that the application

4

was incomplete. The language of this allegation, defendants assert, makes it clear that the prior profit and loss statement was stale. But this reading is only one interpretation of the language here; the allegation could also yield the plausible inference that Select issued a duplicate request. At the motion to dismiss stage, the court construes the pleadings in the light most favorable to the plaintiff. The court declines to dismiss this claim on the basis of the defendants' preferred inference.

As Plaintiffs have alleged sufficient facts to state a claim that their application was complete, the court denies the motion to dismiss as to the claims under Sections 2923.6 and 2924.12.

**2. 12 C.F.R. Section 1024.41(g).**

12 C.F.R. Section 1024.41(g) bars a servicer from moving for a foreclosure judgment or order of sale or from conducting a foreclosure sale after a borrower has submitted a complete application. A complete application is one for which the servicer has received all of the required documents. 12 C.F.R. § 1024.41(b)(1). If an application is incomplete, the servicer must notify the borrower in writing of the missing documents and information. 12 C.F.R. § 1024.41(b)(2)(i)(B). If the borrower submits all of the missing documents, "or no additional information is requested in such notice, the application shall be considered facially complete," and the protections of 12 C.F.R. 1024.41(g) will apply. 12 C.F.R. § 1024.41(c)(2)(iv).

Plaintiffs' claim under 12 C.F.R. Section 1024.41(g), like those under the California Civil Code Sections discussed above, relies on a theory of dual tracking. Plaintiffs assert that their application was facially complete because they timely submitted all of the documents that Select requested. Dkt. No. 12. Defendants respond that Plaintiffs' claim fails because (1) Plaintiffs "do not allege that they ever received a written notice under Section 1024.41(b)(2)(i)(B) as required to trigger the facially complete provisions of Section 1024.41(c)(2)(iv), and (2) Section 1024.41(g) only prohibits a servicer from taking actions that are not alleged in the complaint. Dkt. No. 13.

Defendants' argument that Plaintiffs failed to allege that they received a written notice and that the "facially complete" provision was never triggered is similar to an argument made in another Northern District case, *Terry v. Wells Fargo Bank, N.A.*, No. C-15-01483 WHA, 2016 WL

3999314, at *2-3 (N.D. Cal., July 26, 2016). In *Terry*, the plaintiffs applied for a loan modification, and the servicer sent the plaintiffs letters "confirming receipt of Plaintiffs' application" and pledging to "inform Plaintiffs if any additional documents were needed," followed by a letter requesting additional documents. *Id.* The court concluded that the last letter was a "notice" for the purposes of 12 C.F.R. Section 1024.41(b)(i). *Id.*

Here, Plaintiffs alleged receiving letters requesting additional documents on June 13 and July 17, 2016. Dkt. No. 1, at ¶¶ 21, 22. These letters requesting pay stubs are similar to the letter requesting additional documents in *Terry* that was determined to be a notice. The court is thus not persuaded by Defendants' argument that Plaintiffs failed to allege receiving a written notice. *See also Jones v. Select Portfolio Servicing, Inc.*, No. 3:16-cv-2331-K-BN, 2016 WL 6581279, at *7 (N.D. Tex., Oct. 12, 2016) (concluding that the plaintiff pleaded that he submitted a facially complete application by alleging that he did not receive any notice at all).

Defendants next argue that 1024.41(g) does not apply because they have not moved for a foreclosure judgment or an order of sale or conducted a foreclosure sale. Section 1024.41(g) states: "If a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process but more than 37 days before a foreclosure sale, a servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale . . . ." Defendants argue that Plaintiffs' claim fails because they have not caused—and Plaintiffs have not alleged—the occurrence of any of the events prohibited by 1024.41(g). Defendants do not cite any authority beyond the regulation itself to support their argument, which was made for the first time in their reply brief.

In response (in a supplemental brief addressing this argument), Plaintiffs assert that "by recording a Notice of Trustee's Sale, Defendant was moving for an order of sale in violation of 12 C.F.R. [§] 1024.41(g)." Dkt. No. 31, at 1. Plaintiffs cite *Katica v. Specialized Loan Servicing, LLC*, in which the court concluded that alleging a "Notice of Intent to Foreclose" was sufficient to state a claim under 12 C.F.R. Section 1024.41(g). No. 1:15-CV-2957-ODE-WEJ, 2015 WL 10765188, at *3 n.5, *7 (N.D. Ga. Dec. 1, 2015). The court stated, "the regulation does not appear to require a foreclosure sale, as it states that a 'servicer shall not move for foreclosure judgment or

6

1  order of sale.' . . . Clearly, [the servicer] sought a foreclosure sale here and was stopped only by
2  the injunction issued by [another judge]." *Id.* at \*3, n.5 (quoting 12 C.F.R. § 1024.41(g)).
3  Plaintiffs' argument finds further support in *Fox v. Manley, Deas, & Kochalski, LLC*. No. 16 C
4  5715, 2016 WL 6092638 (N.D. Ill. Oct. 19, 2016). There, the court concluded that the borrower
5  stated a claim under 1024.41(g) by alleging that the loan servicer 'was engaged in conduct that
6  would cause a foreclosure sale"—namely, repeatedly scheduling foreclosure sales, which were
7  averted only by the borrower's unilateral actions. *Id.* at \*5. The court reasoned that the loan
8  servicer was "not permitted to evade RESPA [(Real Estate Settlement Procedures Act)] liability
9  purely because of the borrower's unilateral steps to thwart a foreclosure sale." *Id.*

10       Nevertheless, the court is not persuaded that Plaintiffs have stated a claim for relief under
11  1024.41(g). The regulation, by its plain language, prohibits a servicer from "mov[ing] for
12  foreclosure judgment or order of sale, or conduct[ing] a foreclosure sale." It does not prohibit
13  servicers from taking steps to prepare for a foreclosure sale. The Consumer Financial Protection
14  Bureau's comments on the regulation support this reading:

> "Nothing in § 1024.41(g) prevents a servicer from proceeding with the foreclosure process, including any publication, arbitration, or mediation requirements established by applicable law, when the first notice or filing for a foreclosure proceeding occurred before a servicer receives a complete loss mitigation application so long as such steps in the foreclosure process do not cause or directly result in the issuance of a foreclosure judgment or order of sale, or the conduct of a foreclosure sale, in violation of § 1024.41."

19  78 Fed. Reg. 10696, 10897-90 (Feb. 14, 2013). These comments suggest that Section 1024.41(g)
20  is concerned, in the non-judicial foreclosure context, with the actual "conduct of a foreclosure
21  sale," not the preceding steps, as long as these steps do not ultimately cause the foreclosure sale.
22  The *Fox* court found that a borrower stated a claim under 1024.41(g) *despite* this comment where
23  the servicer had been aggressively moving to complete the foreclosure sale. But no such facts are
24  alleged here. Additionally, *Katica* is not persuasive, as the court in that case ultimately declined to
25  entertain the relevant argument because it was made for the first time in the defendant's reply
26  brief.

27       Plaintiffs have not currently alleged sufficient facts to suggest that Defendants' actions
28  constitute the "conduct of a foreclosure sale" pursuant to Section 1024.41(g), and they thus fail to

7

state a claim under that section. As a result, the court grants the motion to dismiss this claim without prejudice (as it may ultimately become ripe, or Plaintiffs may allege additional facts suggesting that Defendants' actions could be considered "conduct of a foreclosure sale.").

In their supplemental brief, Plaintiffs also request leave to amend to add a new claim for violation of 12 C.F.R. 1024.41(b). "The court should freely give leave [to amend pleadings] when justice so requires." Fed. R. Civ. P. 15(a)(2). Factors for a court to consider in determining whether justice requires granting leave to amend include "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 538 (9th Cir. 1989). The court does not find any of these factors present here, and grants Plaintiffs leave to amend to assert the new claim for violation of 12 C.F.R. 1024.41(b).

### 3. Negligence.

In their sixth claim, for negligence, Plaintiffs assert that the defendants owed them a duty of care in processing their loan modification application. Defendants deny that they owed Plaintiffs a duty of care.

A bank or mortgage servicer "acting within the scope of its conventional activities as a lender of money" does not owe a borrower a duty of care. *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 231 Cal. App. 3d 1089, 1092, 1096 (1991). A bank is generally only liable to a borrower for negligence "when the lender 'actively participates' in the financed enterprise 'beyond the domain of the usual money lender.'" *Id.* at 1096 (quoting *Connor v. Great W. Sav. & Loan Ass'n*, 69 Cal. 3d 850, 864 (1968).

There is a split in authority in the California Courts of Appeal and the courts of this district regarding whether lenders owe borrowers a duty of care related to loan modification applications. In one line of cases, courts have held that lenders do not owe a duty of care when considering or approving loan modification applications, reasoning that "a loan modification is the renegotiation of loan terms, which falls squarely within the scope of a lending institution's conventional role as a lender of money." *Lueras v. BAC Home Loans Servicing, LP*. 221 Cal. App. 4th 49, 67-68

8

(2013). The other line of cases stems from *Alvarez v. BAC Home Loan Servicing, L.P.*, in which the court applied the *Biakanja* factors (from *Biakanja v. Irving*, 49 Cal. 2d 647 (1958)) and found that a bank that agrees to consider a loan modification application owes a duty of care in reviewing and processing that application. 228 Cal. App. 4th 941, 948-49 (2014).

Though this court is persuaded that lenders owe no duty of care to offer or approve loan modification applications under ordinary circumstances and absent "additional facts to support a duty of care," *Morton v. Wells Fargo Bank, N.A.*, No. 16-cv-05833-HRL, 2016 WL 7117041 (N.D. Cal., Dec. 7, 2016), when a plaintiff alleges such additional facts, it is appropriate to consult the *Biakanja* factors to determine if a duty of care exists, *Maomanivong v. Nat'l City Mortg. Co.*, No. C-13-05433 DMR, 2014 WL 4623873, at *12, 15 (N.D. Cal., Sep. 15, 2014). The *Biakanja* factors are as follows: "the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, and the policy of preventing future harm." *Curtis v. Nationstar Mortg. LLC*, No. 14-cv-05167-HRL, 2015 WL 4941554 (N.D. Cal. Aug. 19, 2015).

Here, Plaintiffs allege that the defendants breached a duty "to process Plaintiffs' loan modification application with due care" by confirming that the loan modification application was complete and filing a Notice of Trustee's Sale three days later, "without having contacted Plaintiffs in the interim to request additional application materials," and despite the fact that "Plaintiffs had already provided all supporting income documentation." Dkt. No. 1, at ¶ 74-75. Taking all of the allegations as true, and applying the *Biakanja* factors, the court finds as follows. (1) The transaction was intended to affect Plaintiffs to a significant extent, as the loan modification application could determine whether or not they would keep their home. This factor weighs in favor of finding a duty. (2) The foreseeability of harm to Plaintiffs from mishandling the loan modification application is neutral, as there is no guarantee that the application would be accepted even if properly handled. (3) The degree of certainty that Plaintiffs suffered injury is neutral for the same reason. (4) The closeness of the connection between the defendant's conduct and the injury suffered weighs against finding a duty, as the primary reason for the injury—the arrears,

1 loss of money, expenditure of attorneys' fees, and emotional distress, Dkt. No. 1, at ¶ 76—is the
2 default, rather than the mishandling of the application.  (5) The moral blame attached to the
3 defendants' conduct similarly weighs against finding a duty, as "moral blame cannot be attached
4 to Defendants' conduct where Plaintiff[s'] default created [the] need for a modification."
5 *Maomanivong*, 2014 WL 4623873, at *15.  And (6) the policy of preventing future harm cuts both
6 ways.  *Daniels v. Select Portfolio Servicing, Inc.*, 246 Cal. App. 4th 1150, 1183 (2016).

The *Biakanja* factors lean against finding a duty of care.  Thus, due primarily to the lack of a close connection between the defendants' conduct and Plaintiffs' injury and to the lack of moral blame attached to the defendants' conduct, the court concludes that no duty of care exists based on the facts alleged here.  The court grants the motion to dismiss as to the claim for negligence.

When the court dismisses a claim, leave to amend is generally granted unless an amendment would be futile.  *Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1087-88 (9th Cir. 2002).  In the hearing on this motion, Plaintiffs did not suggest that they could allege any additional facts to support the existence of a duty of care.  In their supplemental briefing, however, Plaintiffs requested leave to amend their negligence claim to assert a different theory for the existence of a duty of care.  Plaintiffs argue that it is a violation of RESPA for a servicer to fail to comply with a regulation passed by the Bureau of Consumer Financial Protection to further that Act's purposes.  Dkt. No. 31, citing 12 U.S.C. § 2605(k)(1)(E).  Plaintiffs further assert that this section of RESPA and 12 C.F.R. Section 1024.40(b), which states that servicers shall "maintain policies and procedures reasonably designed to ensure that servicer personnel" provide accurate information to borrowers about, *inter alia*, submitting complete loss mitigation applications, create a duty that supports Plaintiffs' negligence claims based on the facts already alleged.

The court cannot say at this time that amendment based on the new arguments presented by the Plaintiffs would be futile.  *See Watson v. Bank of America, N.A.*, No. 16cv513-GPC (MDD), 2016 WL 3552061, at *13-15 (S.D. Cal. June 30, 2016) (declining to dismiss negligence claim based on RESPA violation).  The court therefore grants Plaintiffs leave to amend this claim to assert the new theory discussed above.

**CONCLUSION**

The motion to dismiss is denied with respect to claims one and two (re: California Civil Code Sections 2923.6(c) and 2924.12(a)) and granted with respect to claims five and six (12 C.F.R. Section 1024.41(g) and negligence). The court further grants leave to amend the latter two claims and to add a new claim for violation of 1024.41(b). Plaintiffs shall have 21 days from the date of this order to file their First Amended Complaint.

**IT IS SO ORDERED.**

Dated: 12/28/2016

HOWARD R. LLOYD
United States Magistrate Judge