UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SUNIL KUMARAN VETHODY, et al.,<br>Plaintiffs,<br>v.<br>NATIONAL DEFAULT SERVICES CORPORATION, et al.,<br>Defendants. | Case No.16-cv-04713-VKD<br><br>**ORDER DISMISSING CLAIMS 1-4 AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT RE CLAIM 5**<br><br>Re: Dkt. No. 100 |

Before the Court is defendants Select Portfolio Servicing, Inc. ("SPS") and National Default Servicing Corporation's ("NDS") Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment on Plaintiffs' Second Amended Complaint. Dkt. No. 100. All parties have consented to magistrate judge jurisdiction. Dkt. Nos. 8, 9. Having considered the parties' moving papers, declarations, and exhibits as well as the parties' arguments at the hearing on June 26, 2018, for the reasons set forth below, the Court DISMISSES the Vethodys' state law claims and DENIES defendants' motion for summary judgment with respect to the Vethodys' remaining federal claim.

**I. FACTUAL BACKGROUND**

Except where otherwise noted, the following facts are undisputed:

Plaintiffs Sunil Kumaran Vethody and Bindu Baburajan Vethody own a home in San Jose, where they have lived since 2000. Dkt. No. 101-1 ¶ 2. In or around May 2015, the Vethodys fell behind in their mortgage payments. *Id.* ¶ 9. Defendant NDS is the trustee on the deed of trust securing the Vethodys' mortgage loan, and defendant SPS is the current servicer of the Vethodys' loan. *Id.* ¶ 6.

In the spring of 2016, the Vethodys applied for a loan modification with SPS. *Id.* ¶ 4. The Vethodys' son, Arjun Vethody, began contributing his income to the Vethodys' household expenses at some point, and the Vethodys subsequently included evidence of his income in their application materials. *Id.* ¶ 10; Dkt. No. 100-1 ¶ 6.

Thereafter, the Vethodys and SPS engaged in months of communications concerning the documents and information SPS deemed necessary for the Vethodys' application. As of June 10, 2016, the Vethodys had provided a non-obligor certification ("NOC") for their son, a hardship letter, some pay stubs for Sunil Vethody from a company named "N.V. Hospitality," and a profit & loss ("P&L") statement for N.V. Hospitality covering the period of time from February to April 2016. Dkt. No. 100-1 ¶ 20; *see also* Dkt. No. 101-1 ¶ 11; Dkt. No. 101-2 ¶ 9, Ex. E. On June 13, 2016, SPS sent the Vethodys a letter stating that their application was incomplete and requesting by July 13, 2016 the two most recent and consecutive pay stubs for each borrower receiving wages. Dkt. No. 100-1 ¶ 21, Ex. D; Dkt. No. 101-1 ¶ 13. Four days later, on June 17, 2016, SPS sent another letter reiterating that the application was incomplete and requesting by July 17, 2016 the following: (1) updated pay stubs, as the ones previously provided were over 90 days old; (2) that the Vethodys call SPS to clarify the P&L statement received; and (3) a "non-customer income certification" for each non-customer residing in the Vethodys' primary residence and whose income was being utilized for mortgage payments. Dkt. No. 100-1 ¶¶ 22-23, Ex. E; Dkt. No. 101-1 ¶ 14.

On June 24, 2016, the Vethodys' authorized representative called SPS and explained that the P&L statement previously submitted was for Arjun Vethody, and that the pay stubs were for Sunil Vethody. Dkt. No. 100-1 ¶ 24. On June 27, 2016, Bindu Vethody separately called SPS and asked for clarification regarding the documents and information SPS still required. Dkt. No. 101-1 ¶ 16. On that call, Mrs. Vethody explained that because Mr. Vethody was self-employed and currently earned income on a profit-share basis from a recently created business, there were no pay stubs to provide. *Id.*; Dkt. No. 100-1 ¶ 26, Ex. I at 23. She also explained that the P&L statement was for Arjun Vethody's business. Dkt. No. 101-1 ¶ 16; *see also* Dkt. No. 100-1 ¶ 26. According to SPS's contact record, Sunil Vethody also called SPS on that same day, explaining that although

2

he had previously worked for his son's company, N.V. Hospitality, he did not work there any longer, and that the only current income SPS should consider was the income reflected in the N.V. Hospitality P&L statement.[1] Dkt. No. 100-1 ¶ 27. On that same day, SPS asked Mr. Vethody to submit an updated NOC, because the NOC previously submitted was missing some information. *Id.* SPS's contact record for June 27, 2016 notes: "New paystubs will not be sent in"; "All questions about pay stubs answered with clarifying comment"; and "P&L quesation [sp] answered in clarifying comment." Dkt. No. 100-1, Ex. I at 23. The Vethodys submitted an updated NOC on June 29, 2016. Dkt. No. 100-1 ¶ 29; Dkt. No. 101-1 ¶ 17.

On July 1, 2016, and despite the earlier notation in the contact record, SPS sent the Vethodys a letter stating that their application was incomplete and requesting clarification by July 31, 2016 concerning the wages and payroll expenses reflected in the P&L statement previously submitted. Dkt. No. 100-1 ¶ 30, Ex. F. On July 11, 2016, Mrs. Vethody called SPS, and SPS informed her that the P&L statement submitted was incomplete because it lacked the names of the individuals receiving salaries from N.V. Hospitality. *Id.* ¶ 32.

On July 14, 2016, the Vethodys' authorized representative called SPS to discuss SPS's remaining questions about the P&L statement. *Id.* ¶ 33. The Vethodys' representative informed SPS that the N.V. Hospitality salaries reflected in the February-April 2016 P&L statement were paid to Sunil Vethody. *Id.* SPS interpreted this information as conflicting with Mr. Vethody's statement on June 27, 2016 that he was no longer employed at N.V. Hospitality. *Id.* Consequently, SPS sent the Vethodys a letter on July 21, 2016 stating that their application was incomplete and requesting that they contact SPS by August 20, 2016 to provide clarification concerning Mr. Vethody's pay stubs. *Id.* ¶ 34, Ex. G.

---

[1] The record contains some inconsistencies. At his deposition, Mr. Vethody testified that he did not earn money through profit sharing. Dkt. No. 100-2 ¶ 2, Ex. J at 19:17-20. ("Q. Did you ever have any type of profit-sharing income during the 2012-to-2016 period of time? A. No. My son had the money and support. No, I don't personally have profit sharing."). Mr. Vethody also testified at his deposition that he never spoke to anyone at SPS on the telephone. Dkt. No. 100-2 ¶ 2, Ex. J at 20:2–21:6.

3

On July 25, 2016, the Vethodys submitted unspecified "additional loan modification application documents" to SPS.[2] *Id.* ¶ 35. SPS's declarant states that those documents confirmed that Mr. Vethody was "no longer employed by N.V. Hospitality, Inc." but that "SPS, however, required clarification as to whether Mr. Vethody was receiving any income." *Id.* On July 29, 2016, SPS sent another letter to the Vethodys stating that their application was incomplete and requesting that they contact SPS by August 28, 2016 to provide clarification concerning the pay stubs. *Id.* ¶ 36, Ex. H.

Before the expiration of that deadline, defendants recorded a Notice of Trustee's Sale ("NOTS") on August 1, 2016. Dkt. No. 100-1 ¶ 39. The Vethodys received a copy of the NOTS on August 2, 2016, and Mrs. Vethody called and spoke with SPS employee Carissa Ewing that same day. Dkt. No. 101-1 ¶¶ 19, 21, Ex. A; Dkt. No. 100-1 ¶ 40, Ex. I at 20. The parties dispute the content of that telephone call. Mrs. Vethody states that "after reviewing our file with me, Ms. Ewing confirmed that SPS had everything it needed for the modification review and that the application was complete." Dkt. No. 101-1 ¶ 21. Conversely, defendants' contact record notes that Ms. Ewing "advised that we need the following . . . Received clarification that borrower is no longer [e]mployed in NV Hospitality however we need clarification whether borrower is getting any source of income if then we need POI docs," and further that Mrs. Vethody stated that *her* "income with NV Hospitality is [their] only source of income." Dkt. No. 100-1, Ex. I at 20. According to SPS, the latter statement conflicted with Mrs. Vethody's earlier statement on June 27, 2016 that she was unemployed.

The parties' communications continued for several weeks after the NOTS was recorded and received. On August 4, 2016, SPS's contact record shows that a clarifying comment was received, that Mrs. Vethody provided a P&L statement for N.V. Hospitality for the period of time from February to April 2016, and that she explained that she did not receive pay stubs as N.V. Hospitality was Arjun Vethody's self-employment income. *Id.* at 18. On August 9, 2016, Mrs. Vethody called SPS again and clarified that *she* did not work and did not receive any income at

---

[2] Nothing in the record identifies the additional documents.

4

all, that only Mr. Vethody and their son Arjun Vethody worked, and that SPS had received the proof of income for both Mr. Vethody and his son. *Id.*; Dkt. No. 100-1 ¶ 41. Mrs. Vethody called again on August 10, 2016, stating again that she did not work and had no income, that Mr. Vethody was no longer employed at N.V. Hospitality and instead worked as an independent contractor at Tekonix and did not receive any pay stubs, and that N.V. Hospitality was his son's business. Dkt. No. 100-1 ¶ 42, Ex. I at 16–17; *see also* Dkt. No. 101-1 ¶ 23. On this August 10 call, SPS requested another P&L statement from the Vethodys. Dkt. No. 100-1, Ex. I at 16–17; Dkt. No. 101-1 ¶ 23. The SPS contact record also reflects that on August 10, the Vethodys provided a list of individuals receiving a salary from N.V. Hospitality. Dkt. No. 100-1, Ex. I at 16. This list did not include Mr. Vethody. *Id.*

On August 17, 2016, the Vethodys filed this lawsuit against defendants. Dkt. No. 1.

On September 14, 2016, SPS asked again for clarification about the status of Mr. Vethody's employment at N.V. Hospitality and his source(s) of income. Dkt. No. 101-2 ¶¶ 33, 35, 38, Ex. C at SPS005724. SPS's contact record indicates that SPS received a letter from the Vethodys on September 26, 2016, and two days later, SPS noted, "Received all the document, locked document packet ready for POI fifs." *Id.*, Ex. C at SPS005720.

On October 3, 2016, SPS's contact record indicates that documentation for the Vethodys' loan modification application was complete. Dkt. No. 101-2, Ex. C at SPS005719 ("Documentation Complete: Yes.").

To date, the Vethodys' house has not been sold. Dkt. No. 100-1 ¶ 44.

**II.     LEGAL STANDARD**

     **A.     Summary Judgment**

A party may move for summary judgment on a "claim or defense" or "part of . . . a claim or defense." Fed. R. Civ. P. 56(a). Summary judgment is appropriate when, after adequate discovery, there is no genuine issue as to any material facts and the moving party is entitled to judgment as a matter of law. *Id.*; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Material facts are those that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*,

5

477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Southern Calif. Gas. Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003).

On an issue where the nonmoving party will bear the burden of proof at trial, the moving party may discharge its burden of production either (1) by "produc[ing] evidence negating an essential element of the nonmoving party's case" or (2) after suitable discovery, by "show[ing] that the nonmoving party does not have enough evidence of an essential element of its claim or defense to discharge its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000); *see also Celotex*, 477 U.S. at 324–25. Once the moving party meets its initial burden, the opposing party must then set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion. *See* Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 250. "A party opposing summary judgment may not simply question the credibility of the movant to foreclose summary judgment." *Anderson*, 477 U.S. at 254. "Instead, the non-moving party must go beyond the pleadings and by its own evidence set forth specific facts showing that there is a genuine issue for trial." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001) (citations and quotations omitted). The non-moving party must produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991). Conclusory or speculative testimony in affidavits and moving papers is insufficient to raise a genuine issue of material fact to defeat summary judgment. *Thornhill Publ'g Co., Inc. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

1  In deciding a motion for summary judgment, a court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255; *Hunt v. City of Los Angeles*, 638 F.3d 703, 709 (9th Cir. 2011).

### B. Mootness

"Mootness is a jurisdictional issue." *Foster v. Carson*, 347 F.3d 742, 745 (9th Cir. 2003). A claim is moot if it has lost its character as a present, live controversy and if no effective relief can be granted due to subsequent developments. *Am. Tunaboat Ass'n v. Brown*, 67 F.3d 1404, 1407 (9th Cir. 1995). "If there is no longer a possibility that [a litigant] can obtain relief for his claim, that claim is moot and must be dismissed for lack of jurisdiction." *Ruvalcaba v. City of L.A.*, 167 F.3d 514, 521 (9th Cir. 1999).

The Court has a continuing duty to dismiss an action whenever it appears that it lacks jurisdiction. Fed. R. Civ. P. 12(h)(3); *see also Csibi v. Fustos*, 670 F.2d 134, 136 n.3 (9th Cir.1982) (noting that lack of subject matter jurisdiction can be raised sua sponte by a court at any time, as it is "the duty of the federal courts to assure themselves that their jurisdiction is not being exceeded"). Because the issue of mootness may render the court without jurisdiction to review the substance of the complaint, the court addresses the mootness question first. *See, e.g.*, *del Campo v. Kennedy*, 491 F. Supp. 2d 891, 899 (N.D. Cal. 2006).

## III. DISCUSSION

The Vethodys have asserted five claims for relief. The first four claims arise under the California Homeowner's Bill of Rights ("HBOR"), and the fifth claim arises under the federal regulations implementing the Real Estate Settlement Procedures Act ("RESPA"):

1. Violation of the HBOR prohibition against "dual tracking" under Cal. Civil Code § 2923.6(c);
2. Injunctive relief under Civil Code § 2924.12(a) for a violation of Cal. Civil Code § 2923.6(c);
3. Violation of HBOR's requirement of a single point of contact responsible for coordinating receipt of all documents associated with available foreclosure prevention

1  alternatives and notifying the borrower of any missing documents necessary to
2  complete the application under Cal. Civil Code § 2923.7(b)(2);
3     4. Violation of HBOR's requirement of a single point of contact having access to
4  individuals with the ability and authority to stop foreclosure proceedings when
5  necessary under Cal. Civil Code § 2923.7(b)(5); and
6     5. Failure to exercise reasonable diligence in obtaining documents and information to
7  complete a loss mitigation application under 12 C.F.R. § 1024.41(b)(1).

Dkt. No. 83 ¶¶ 36-73.

### A. HBOR Claims

Defendants argue that they are entitled to summary judgment on the Vethodys' HBOR claims for two reasons: (1) no dual tracking occurred because the Vethodys never submitted a complete application prior to the NOTS issuance, and (2) the NOTS has expired, rendering the Vethodys' claims moot. The Court considers the mootness argument first, as it must determine whether it still has jurisdiction over the claims at issue before examining their merits. *See* Fed. R. Civ. P. 12(h)(3); *Csibi*, 670 F.2d at 136 n.3; *del Campo*, 491 F. Supp. 2d at 899.

The parties do not dispute that the NOTS expired on August 1, 2017, and that no foreclosure sale took place while the NOTS was active. In their complaint, the Vethodys seek injunctive relief and attorneys' fees for their HBOR claims. Dkt. No. 83 ¶¶ 44, 52, 57, 62. These are the only remedies the HBOR provides. Cal. Civ. Code § 2924.12(a)(1), (h). However, because the NOTS has expired and the Vethodys' house was never sold, injunctive relief is neither available nor warranted. Thus, the four HBOR claims are moot. *Foster*, 347 F.3d at 746 ("Where the activities sought to be enjoined already have occurred, and the appellate courts cannot undo what has already been done, the action is moot, and must be dismissed.") (quoting *Bernhardt v. Cnty. of Los Angeles*, 279 F.3d 862, 871 (9th Cir. 2002).

In their opposition brief, the Vethodys argue that their claims are not moot because the HBOR statute provides that a prevailing borrower who successfully obtains injunctive relief may be eligible for attorneys' fees and costs. Dkt. No. 101 at 8–9; Cal. Civ. Code § 2924.12(h). The Vethodys did not obtain an injunction, nor did they seek a preliminary injunction. However, they

contend that "the Notice of Trustee's sale expired only by virtue of Plaintiffs brin[g]ing the instant action" and that their "lawsuit effectively enjoined the foreclosure sale of Plaintiffs' property during the interim of this lawsuit until the Notice of Trustee's Sale expired and was rendered inoperative." Dkt. No. 101 at 9, 10. Consequently, they argue, the possibility of an award of attorneys' fees and costs creates a live controversy.

"[T]he existence of a claim for attorney fees is not sufficient to revive an otherwise moot action." *Foster*, 347 F.3d at 746 (citing *Cammermeyer v. Perry*, 97 F.3d 1235, 1238 (9th Cir. 1996)). Other judges in this district have dismissed foreclosure actions as moot under similar circumstances, despite the possibility that the plaintiffs in those cases might be eligible for attorneys' fees under HBOR. *See, e.g.*, *Pearson v. Green Tree Servicing, LLC*, No. 14-cv-04524-JSC, 2014 WL 6657506, at *1, 3–4 (N.D. Cal. Nov. 21, 2014) (dismissing case as moot, but without prejudice to plaintiff filing a motion for attorneys' fees); *Le v. Bank of N.Y. Mellon*, 152 F. Supp. 3d 1200, 1214–15 (N.D. Cal. 2015) (finding HBOR claims mooted by expiration of notice of sale, but noting that grounds could exist for granting plaintiff prevailing party status for the purposes of future motion for attorneys' fees); *Mace v. Ocwen Loan Servicing, LLC*, No. 16-cv-05480-MEJ, 2018 WL 368601, at *4–5 (N.D. Cal. Jan. 11, 2018) (dismissing case as moot following defendant's issuance of notice of rescission, while not precluding plaintiffs from seeking attorneys' fees at a later time). The Court expresses no opinion at this time as to whether the Vethodys would qualify as a "prevailing borrower" eligible for attorneys' fees under Cal. Civ. Code § 2924.12(h).

Because the parties do not dispute that the NOTS expired and that the Vethodys' house has not been sold, the Court finds the Vethodys' HBOR claims are moot. Accordingly, the Court DISMISSES claims 1, 2, 3 and 4 of the complaint for lack of subject matter jurisdiction.

### B.     RESPA Claim

The RESPA implementing regulations provide that "[a] servicer shall exercise reasonable diligence in obtaining documents and information to complete a loss mitigation application." 12 C.F.R. § 1024.41(b)(1). Borrowers may enforce the provisions of C.F.R. § 1024.41 pursuant to the provisions of Section 6(f) of RESPA, 12 U.S.C. § 2605(f). 12 C.F.R. § 1024.41(a). An

application is complete when "a servicer has received all the information that the servicer requires from a borrower in evaluating applications for the loss mitigation options available to the borrower." *Id.* § 1024.41(b)(1). According to the text of the regulation itself and the Consumer Financial Protection Bureau's official interpretation, then, a servicer has the discretion to decide when applications are "complete"—at least with respect to information within the control of the borrower. 12 C.F.R. § 1024, supp. I, § 41(b)(1) cmt. 1 ("A servicer has flexibility to establish its own application requirements and to decide the type and amount of information it will require from borrowers applying for loss mitigation options.")[3]; 12 C.F.R. § 1024, supp. I, § 41(b)(1) cmt. 5 ("A loss mitigation application is complete when a borrower provides all information required from the borrower notwithstanding that additional information may be required by a servicer that is not in the control of a borrower."). "Although a servicer has flexibility to establish its own requirements regarding the documents and information necessary for a loss mitigation application, the servicer must act with reasonable diligence to collect information needed to complete the application." 12 C.F.R. § 1024, supp. I, § 41(b)(1) cmt. 4. "Reasonable diligence" by the servicer includes requesting the information necessary to make an application complete promptly after receiving the application. *Id.*

Unlike the HBOR statute, nothing in the RESPA statute or the implementing regulations indicates when a servicer's conduct ceases to be "reasonable diligence" in pursuit of necessary information and becomes instead an effort to avoid a decision on the merits of the application. *Cf.* Cal. Civ. Code § 2924.11(f) (noting under HBOR that "an application shall be deemed 'complete' when a borrower has supplied the mortgage servicer with all documents required by the mortgage servicer within the reasonable timeframes specified by the mortgage servicer"); *Curtis v. Nationstar Mortg. LLC*, No. 14-cv-05167-HRL, 2016 WL 1275599, at *5 (N.D. Cal. Apr. 1, 2016) (rejecting argument "that the application cannot be complete until Defendants deem it complete" and refusing to "read the [HBOR] prohibition against dual tracking to grant loan servicers unilateral discretion to determine whether applications are complete or incomplete"); *Greene v.*

---

[3] Available at https://www.consumerfinance.gov/eregulations/1024-Subpart-Interp/2015-18239#1024-41-b-1-Interp-1.

*Wells Fargo Bank, N.A.*, 2016 WL 360756, at *4 (N.D. Cal. Jan. 28, 2016) (rejecting defendant's contention that Cal. Civ. Code § 2923.6(h) "permits a mortgage servicer to create a moving target where borrowers have no way of knowing whether a loan modification application is complete unless the mortgage servicer tells them so," because such a reading would permit mortgage servicers to avoid the application of Section 2923.6 by noticing a trustee's sale and then afterward requesting additional documents that it had not previously required). Neither defendants nor the Vethodys cite any case law or other authority on this point.

Defendants move for summary judgment on the Vethodys' RESPA claim, arguing that the undisputed facts demonstrate that SPS properly processed the Vethodys' application and advised them of the required documentation. Dkt. No. 100 at 17–18. Defendants argue that the Vethodys' inability to obtain substantive loan modification review was because they failed to provide SPS with the information SPS required and because they submitted conflicting information to SPS, and not because SPS did not act in a reasonably diligent manner. The Vethodys do not address a servicer's discretion regarding what documents are necessary to complete a loan modification application under 12 C.F.R. § 1024(b)(1), but rather assert that their application *was* complete and defendants simply failed to realized that because defendants were not reasonably diligent. Dkt. No. 101 at 14. Specifically, the Vethodys contend that defendants repeatedly requested documents and information that the Vethodys had already supplied and, in some instances, after SPS had advised the Vethodys that nothing further was needed. Dkt. No. 101 at 13. The Vethodys argue that SPS's repeated requests for documents and information evidence a failure to exercise reasonable diligence in violation of 12 C.F.R. § 1024(b)(1).

As the party moving for summary judgment on an issue for which the Vethodys bear the burden of proof, defendants must produce evidence either negating an essential element of the Vethodys' claim or showing that they lack sufficient evidence of an essential element of the claim. Defendants rely on the declaration of an SPS Document Control Officer who lacks personal knowledge of the communications between SPS representatives and the Vethodys, but who attests to the business practices that result in the creation and maintenance of SPS's written "contact record" reflecting its communications with the Vethodys. Dkt. No. 100-1. According to

11

defendants, the contact record demonstrates that SPS diligently sought complete and accurate information from the Vethodys, and such information was not supplied before the NOTS issued. Dkt. No. 11 at 18; Dkt. No. 103 at 13. Defendants do not rely on testimony from any of the various SPS employees that actually interacted with the Vethodys.

The Vethodys primarily rely on the declaration of Bindu Vethody. Dkt. No. 101-1. They argue that Mrs. Vethody's declaration demonstrates that the Vethodys submitted all the documents necessary for their loan modification application, and that SPS repeatedly asked for documents or information that the Vethodys had already provided. Mrs. Vethody's declaration does not attach as exhibits any copies of what the Vethodys purportedly submitted to SPS or any copies of any letters from SPS, with the exception of the NOTS that SPS recorded on August 1, 2016. The Vethodys did not submit a declaration from their authorized representative.

Defendants object to certain portions of the Vethodys' evidence, including portions of Mrs. Vethody's declaration which they contend are inconsistent with her deposition testimony. Before addressing the question of whether defendants have met their burden on summary judgment with respect to the RESPA claim, the Court addresses defendants' objections to certain evidence on which the Vethodys rely in opposing summary judgment. Dkt. No. 103-1.[4]

### 1. Vethody Declaration ¶ 18

Defendants object to Paragraph 18 of Mrs. Vethody's declaration (Dkt. No. 101-1), which states, "On July 29, 2016, our authorized agent contacted SPS to confirm the status of the application and was advised that the application was complete and was sent to underwriting." Dkt. No. 103-1 at 2. Defendants object on the basis that the statement lacks personal knowledge and foundation under Federal Rule of Evidence 602 and that it also constitutes inadmissible hearsay under Federal Rule of Evidence 802. The Court agrees. The declaration is not made

---

[4] Defendants filed their objections separately from their reply brief, contrary to Civil Local Rule 7-3(c), which states that "[a]ny evidentiary and procedural objections to the opposition must be contained within the reply brief or memorandum." Defendants' reply brief discusses some of those evidentiary objections, but it does not contain all of the objections in the separate submission. However, the Court will consider the separate submission, because the separate submission and reply brief collectively are within the 15-page limit for a reply brief. Civil L.R. 7-3(c), 7-4(b).

12

based upon personal knowledge of the communication between the Vethodys' representative and SPS, and the Vethodys offer it to prove the truth of the matter asserted in the statement—i.e., that SPS had concluded their loan modification application was complete as of July 29, 2018 and had communicated that to their authorized representative. *See, e.g.*, Dkt. No. 101 at 9–11. Defendants' objections are sustained, and the Court will strike Paragraph 18.

### 2. Vethody Declaration ¶ 20

Defendants object to Paragraph 20 of Mrs. Vethody's declaration for the same reasons they object to Paragraph 18. The specific portion of Paragraph 20 that defendants find objectionable states, " . . . and [we] had been told on July 29, 2016 that the file was complete and had been sent to underwriting . . . ." Defendants point out that only the authorized representative (and not Mr. or Mrs. Vethody) participated in the conversation during which it is alleged an SPS representative said the Vethodys' file was complete. Dkt. No. 103 at 6, 11–12. If that is the case, the challenged statement in Paragraph 20 is not made on personal knowledge. For the same reasons discussed above, defendants' objections are sustained, and the Court will strike the challenged portion of Paragraph 20 concerning the purported July 29, 2016 communication.

### 3. Vethody Declaration ¶ 21

Defendants object to Paragraph 21 of Mrs. Vethody's declaration as inconsistent with her deposition testimony, and therefore insufficient to create a genuine dispute of material fact. Paragraph 21 of the declaration states:

> Therefore, we contacted Defendant about the Notice of Trustee's Sale, but SPS' representative Carissa Ewing merely informed me that it was standard procedure for SPS to record a Notice of Trustee's Sale during the modification process. However, after reviewing our file with me, Ms. Ewing confirmed that SPS had everything it needed for the modification review and that the application was complete. In addition, Ms. Ewing advised that she could get the Notice of Trustee's Sale cancelled since we had supplied all information SPS needed for the review.

Mrs. Vethody suggests in her declaration, but does not expressly state, that the contact described in Paragraph 21 took place on August 2, 2016. *See* Dkt. No. 101-1 ¶¶ 20-22 ("On August 2, 2016,

13

we received a copy of the Notice of Trustee's Sale. . . . Therefore, we contacted Defendant about the Notice of Trustee's Sale, but SPS'[s] representative Carissa Ewing merely informed me that it was standard procedure for SPS to record a Notice of Trustee's Sale during the modification process. . . . Thereafter, we attempted to contact Carissa Ewing, by voicemail and email on August 3, 2016, August 4, 2016, and August 9, 2016."). At her deposition, however, Mrs. Vethody testified that she did not speak with Ms. Ewing until August 5 or 6. Dkt. No. 100-2, Ex. K at 32:7-20.

Defendants note correctly that a party cannot create a genuine issue of fact to defeat summary judgment by contradicting previously sworn testimony without explaining the contradiction or attempting to resolve the disparity. *See, e.g.*, *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806–07 (1999); *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009).

The Vethodys did not file any written response to defendants' objections to evidence. When asked about the apparent inconsistency at the hearing, counsel for the Vethodys did not offer an explanation, but argued that any inconsistency regarding the date of the conversation was immaterial given the Vethodys' contention that the loan modification application was complete before the NOTS issued, regardless of what SPS may have said about it. Dkt. No. 105 at 11:13:47-11:14:54.

The inconsistency between Mrs. Vethody's deposition testimony and her declaration is not material to the issues presented on summary judgment. Whether the conversation Mrs. Vethody describes took place on August 2 or instead on August 5 or 6 does not make it more or less significant for purposes of assessing whether, as a matter of law, the Court may find defendants acted with reasonable diligence. Defendants do not appear to dispute that Ms. Ewing and Mrs. Vethody spoke in early August 2016 after SPS recorded the NOTS.[5] To the extent defendants suggest that a dispute regarding the date of the conversation prevents the Court from considering

---

[5] The defendants' own contact record reflects a communication between Ms. Ewing of SPS and Mrs. Vethody on August 2, 2016. Dkt. No. 100-1 ¶ 40; *see also* Dkt. No. 100-1, Ex. I at 20.

14

the substance of the alleged communication on summary judgment, the Court overrules that objection.

### 4. Vethody Declaration ¶¶ 23, 24, and 25

Defendants object to Paragraphs 23, 24, and 25 of Mrs. Vethody's declaration as irrelevant. These paragraphs concern communications between the Vethodys and SPS in August 2016 concerning additional requests for and provision of documents. Defendants appear to argue that these paragraphs are irrelevant because the communications occurred after the NOTS issued. Because those communications may be relevant to and probative of the question of what documents and information were necessary to complete the Vethodys' application, the Court overrules defendants' objections to these paragraphs.

### 5. Koster Declaration ¶¶ 8-9, Exhibits D and E

Defendants object to Exhibits D and E attached to the declaration of the Vethodys' counsel, Allan Koster, for lack of personal knowledge and lack of foundation under Federal Rule of Evidence 602, as inadmissible hearsay under Rule 802, and as lacking authentication under Rule 901. Exhibit D purports to consist of pay stubs for Sunil Vethody from N.V. Hospitality and a "salary break up" listing N.V. Hospitality employees who received salaries or wages. Exhibit E purports to be a P&L statement for N.V. Hospitality covering the period from February to April 2016.

As the Vethodys' attorney, Mr. Koster may properly attest that Exhibits D and E are true and correct copies of documents that SPS produced to the Vethodys. Such testimony is within his personal knowledge. With respect to defendants' authenticity objection, the authentication requirement is satisfied by "evidence sufficient to support a finding that the item is what its proponent claims." Fed. R. Evid. 901(a). At the summary judgment hearing, defendants did not dispute that SPS had produced Exhibits D and E during discovery to the Vethodys. Defendants further clarified that they did not dispute that SPS originally received those documents from the Vethodys. Rather, defendants appear to object solely that there is no evidentiary basis for Mr. Koster to attest to *when* the Vethodys originally provided the documents in Exhibits D and E to

SPS. Defendants' objection is not well-taken, as Mr. Koster does not, in fact, attest to the date on which SPS received Exhibits D and E.[6] Defendants' objections on this point are overruled.

Having addressed defendants' evidentiary objections, the Court turns to the admissible evidence presented on summary judgment with respect to the remaining RESPA claim. The critical issue here is whether SPS acted with reasonable diligence in obtaining and evaluating the information and documents required for the Vethodys' loan modification application. The evidence on this point is disputed, particularly with respect to the two categories of documentation that appear to have spawned the bulk of the communications between SPS and the Vethodys: Mr. Vethody's pay stubs and the N.V. Hospitality P&L statements.

*Pay stubs.* It is undisputed that the Vethodys provided pay stubs for Mr. Vethody from his work at N.V. Hospitality on June 10, 2016. On June 17, 2016, SPS requested updated pay stubs, as the ones the Vethodys had provided were over 90 days old. On June 27, 2016, at least one of the Vethodys clarified by telephone that Mr. Vethody was no longer employed at N.V. Hospitality and that there were no additional pay stubs to provide. Even when Mr. Vethody moved on to an independent contractor position at Tekonix, he did not receive pay stubs. Pay stubs are information that SPS might reasonably require if they existed, but if they did not exist and could not be obtained from the Vethodys', it would be neither reasonable nor diligent for SPS to continue to demand them.

After June 27, 2016, SPS continued to send letters seeking clarification concerning the pay stubs. Dkt. No. 100-1, Exs. G, H. Defendants argue that these letters resulted from the Vethodys' representative communicating to SPS on July 14, 2016 that "Sunil Vethody was receiving a salary," which SPS (or at least the SPS employee who spoke to the Vethodys' representative) felt conflicted with Mr. Vethody's statement on June 27 that he was no longer employed at N.V. Hospitality. Dkt. No. 103 at 4; Dkt. No. 100-1 ¶ 33. SPS may have been genuinely confused; however, the pay stubs that SPS received from the Vethodys and produced in discovery are dated

---

[6] SPS's own contact record suggests that SPS received at least some of the documents in Exhibits D and E from the Vethodys on June 10, 2016. Dkt. No. 100-1, Ex. I at 24–25 (indicating that pay stubs, hardship letter, proof of income, and an NOC were received by fax on June 10, 2016.)

16

October 5, 2015, November 6, 2015, and April 10, 2016, and reflect Mr. Vethody's employment with N.V. Hospitality during those periods. Dkt. No. 101-2, Ex. D at SPS000203–05. This is not inconsistent with the Vethodys' statement that as of *June 27, 2016*, Mr. Vethody no longer worked there. Moreover, the letters SPS sent while attempting to ascertain the status of Mr. Vethody's income continued to mention pay stubs, despite the Vethodys repeatedly informing SPS that no pay stubs existed. Whether SPS's efforts to understand Mr. Vethody's income were reasonably diligent actions, or instead reflected a lack of diligence, is a question of fact that cannot be resolved as a matter of law on summary judgment.

*P&L statements.* The same is true with respect to the P&L statements. The Vethodys first submitted an N.V. Hospitality P&L statement on June 10, 2016. SPS noted that it needed clarification regarding the identity of the people whose income was reflected in the P&L statement on June 17, 2018. The Vethodys' representative informed SPS on June 24, 2016 that the P&L statement was for Arjun Vethody's business. Mrs. Vethody's declaration does not address SPS's subsequent request for the N.V. Hospitality salary breakdown by employee, but according to SPS's contact record, it appears that the first time SPS sought clarification concerning the names of the N.V. Hospitality employees receiving salaries or wages was in a telephone call with the Vethodys' representative on July 14, 2016. Dkt. No. 100-1, Ex. I at 22.

At the hearing, counsel for defendants acknowledged that a dispute existed concerning when SPS received certain documents from the Vethodys—in particular, the outstanding N.V. Hospitality salary breakdown by employee. The Vethodys argue that the documents were submitted on June 10, 2016, whereas the defendants contend that that information was not provided to SPS until August 10, 2016. Mrs. Vethody states in somewhat conclusory fashion that during the month of May 2016, the Vethodys submitted "all information and documents needed for the application, including . . . a profit and loss statement," and that on August 10, SPS requested another P&L statement for Arjun Vethody. Dkt. No. 101-1 ¶¶ 11, 23. The SPS contact record indicates that it received the salary breakdown on August 10, 2016. Dkt. No. 100-1, Ex. I at 16.

17

Thus, the issue of whether defendants were reasonably diligent in their efforts to obtain complete information concerning the P&L statement requires determining whether Mrs. Vethody's testimony or SPS's business records are more credible, and also requires determining whether the information the Vethodys provided to SPS explaining the P&L statements was sufficient and should have been deemed so by SPS. These are not determinations that can be made on summary judgment. *See James v. Ocwen Loan Servicing, LLC*, No. 1:17-cv-0501, 2017 WL 6336770, at *5–6 (S.D. Ohio Dec. 12, 2017) (denying summary judgment where determination of credibility of defendant's business records versus plaintiff's self-serving declaration lay within the province of the jury).

## IV. CONCLUSION

For the foregoing reasons, the Court DISMISSES the Vethodys' four HBOR claims, which are mooted by the expiration of the Notice of Trustee's Sale. The Court DENIES defendants' motion for summary judgment as to the remaining RESPA claim.

**IT IS SO ORDERED.**

Dated: July 16, 2018

*Virginia K. DeMarchi*
VIRGINIA K. DEMARCHI
United States Magistrate Judge